IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

RAOUL FLAVIANO,

    Plaintiff,

v.

CALIFORNIA DEPARTMENT OF STATE HOSPITALS, NAPA, DENISE DALY, JASON GOODING, and DOES 1 through 50, inclusive,

    Defendants.

No. C 14-05671 WHA

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## INTRODUCTION

In this employment-discrimination action, defendants argue that plaintiff's claims are barred by the terms of a settlement agreement and move for summary judgment on that basis. For the reasons stated below, defendants' motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**.

## STATEMENT

Plaintiff Raoul Flaviano was a hospital police sergeant employed by defendant, the California Department of State Hospitals, at Napa State Hospital. Throughout 2011 and 2012, Flaviano's wife was also employed as a hospital police officer.

In July 2012, Flaviano requested accommodations to take care of certain childcare needs, specifically for a work schedule that included a break of a few minutes in each shift so that he and his wife could transfer care of their child between shifts. Flaviano alleges that his

supervisors, defendants Chief Denise Daly and Lieutenant Jason Gooding, made several inappropriate comments about Flaviano, his wife, and their need for childcare accommodations, which led to a "campaign of harassment and unequal treatment." Flaviano claims his request for accommodations was denied "under the guise of 'nepotism.'" Flaviano submitted a formal complaint of discrimination to the Equal Employment Opportunity Office of DSH. That complaint alleged that Chief Daly and Lieutenant Gooding had discriminated against Flaviano and harassed him by making inappropriate comments and denying his request for accommodations (Flaviano Decl. 5–7; Rashkis Decl., Exh. 6).

Flaviano claims that Chief Daly and Lieutenant Gooding took adverse employment actions against him in the work place in retaliation for filing that complaint, for example by moving him to a less-desirable shift. In September 2012, Flaviano filed a new internal EEO complaint alleging retaliation (Flaviano Decl. ¶¶ 8–9; Rashkis Decl., Exh. C).

In October 2012, Flaviano requested leave under the Family Medical Leave Act in order to assist with a family emergency, and elected to use his available vacation pay concurrently with that leave. Flaviano claims that Chief Daly and Lieutenant Gooding interfered with his leave request and made inappropriate comments about his request for leave. Flaviano later informed Lieutenant Gooding that he would need to extend his leave by three days, but got no response. He received a formal disciplinary notice from Chief Daly and Lieutenant Gooding for being "AWOL" for those three days, resulting in docked pay (Flaviano Decl. 10–13; Rashkis Decl., Exh. D).

On October 30, 2012, Flaviano brought his daughter to work while he was on duty in violation of DSH policy. He explained to his supervisor that he did this because his wife could not supervise her that day and he allegedly could not afford childcare. Flaviano received a disciplinary action in the form of a "Counseling Record" due to that conduct, at which he was advised that his "unwillingness or inability to resolve [his] childcare issues [were] detrimental to the department and severely impaire[d] [his] effectiveness as a supervisor" (Rashkis Decl., Exh. B).

On November 8, 2012, Flaviano filed a formal complaint for retaliation with the state EEO office, claiming that Chief Daly and Lieutenant Gooding were retaliating against him for filing his prior complaints. He also made a wage claim under the Fair Labor Standards Act and the California Labor Code for the docked pay. The state EEO office conducted an investigation and in November 2013 concluded that there was insufficient evidence of a violation of EEO policies, though Flaviano retained the right to file a complaint with the Department of Fair Employment and Housing or the Equal Employment Opportunity Commission (Flaviano Decl. ¶¶ 14–15, Exh. A; Rashkis Decl., Exh. D).

On November 21, 2012, Officer James Nohel observed Flaviano conducting what appeared to be a traffic stop. Flaviano's personal vehicle was parked on the side of the road behind another person's vehicle. He had activated a system of flashing red and blue lights on the front grill of his vehicle, in violation of California law. Officer Nohel observed Flaviano speaking to the driver of the other vehicle and saw he had exposed his off-duty firearm in violation of DSH policy. Officer Nohel informed defendant Lieutenant Jason Gooding of what he observed (SPB Record at 8).

On December 5, 2012, Chief Daly reviewed her file on Flaviano because of the concerns raised by Officer Nohel and discovered Flaviano had failed to submit his quarterly firearms documentation and failed to identify, in writing, the off-duty firearm he intended to carry (*id.* at 9).

DSH decided to investigate Flaviano's conduct regarding the traffic stop Nohel had observed. The investigators interviewed Flaviano and concluded that he had deliberately attempted to mislead them throughout the process (*id.* at 10).

In May 2013, Flaviano was served with a "Notice of Adverse Action" terminating his employment (*id.* at 6–12). The NOAA specifically identified the following conduct as the basis for Flaviano's termination and provided detailed descriptions of the events discussed above (*id.* at 10):

> You illegally installed emergency lights on your personal vehicle and used them to make a traffic stop. You neglected to qualify your off-duty firearm and submit documentation to your Chief. You failed to appropriately stow your off-duty weapon during duty

3

> hours, and you failed to keep your off-duty firearm concealed to the casual observer. You knowingly violated California Vehicle Code and Department of State Hospital Policy and gave false information in attempt to mislead investigators. Your dishonesty makes you unreliable as a potential witness. Your actions as described above are unbecoming of a Hospital Police Officer and bring discredit to you and to the Napa State Hospital Police Department. Your conduct was unacceptable and will not be tolerated.

A section entitled "Notice of Progressive Discipline" in the NOAA also referred to the prior disciplinary action taken against Flaviano because he brought his daughter to work.

\*     \*     \*

Flaviano appealed his dismissal to the California State Personnel Board. Flaviano's complaint in the appeal stated the reason for his appeal (*id.* at 14):

> I deny these allegations, and I have witnesses, documents, and evidence which can confirm that (1) I did turn in the weapons' qualification form, (2) I did not lie about anything during my investigation interview, and (3) there was nothing improper about me using "red and blue" lights. I believe that I did my job [by conducting the traffic stop] by helping an elderly member of the public, who was obviously lost, and there was [sic] never any problems with my 'red and blue' lights until after I filed an EEO charge against Chief Daly and her leadership staff. I was never given a *Skelly* hearing, and my rights under the Public Safety Procedural Bill of Rights were violated. I am asking that I be reinstated, with full backpay and any other relief that can be provided.

Flaviano did not pursue any claims of discrimination, harassment, retaliation, denial of reasonable accommodations, or wage claims in his SPB appeal (*id.* at 13; Poore Decl. ¶ 6, Exh. D).

Flaviano, who was represented by counsel, negotiated and signed a settlement agreement with DSH resolving his SPB appeal in February 2014. Counsel for both Flaviano and DSH approved the agreement as to form, and the agreement was approved and adopted by SPB as its decision in March 2014.

Under the terms of the settlement agreement, Flaviano agreed to withdraw his appeal and to resign from employment with DSH "for retirement purposes." DSH agreed to accept that resignation and to remove the NOAA and all supporting documents, the settlement agreement, and the SPB decision from Flaviano's official personnel file (SPB Record at 102).

4

1   Flaviano additionally agreed to release all claims against DSH and its employees
2   according to the following terms (*id.* at 102–03):

> [T]his Stipulation, releases, acquits, and forever discharges [DSH] and it agents, representatives, and employees, successors and assigns, from any actions, or claims, known or unknown, or any claim under federal or state law including, but not limited to, claims under the [FEHA] and [Title VII], which may exist relating to the events giving rise to this Notice of Adverse Action and subsequent appeal by [Flaviano].

7   Flaviano also expressly waived the application of Section 1542 of the California Civil Code,
8   which, absent such waiver, would have preserved claims he may not have known about or
9   suspected to exist at the time of the release.

10   The agreement contained a merger clause which read (*id.* at 103):

> This Agreement constitutes the entire agreement between the parties on the matters settled herein. Moreover, the terms of this Agreement cannot be amended except in writing, signed by all the parties thereto. [Flaviano] acknowledges that no promises or representations other than those set forth in this Agreement were made to him by or on behalf of [DSH] for purposes of inducing him to enter into this Agreement.

15       \*    \*    \*

16   Flaviano commenced this action in December 2014. His complaint alleges seven claims
17   for relief, including violations of Section 1983 of Title 42 of the United States Code, the Fair
18   Employment and Housing Act, the California Family Rights Act, the Family Medical Leave Act,
19   and the Fair Labor Standards Act. Defendants now move for summary judgment on the basis
20   that all of plaintiff's claims are barred by the terms of the settlement agreement. This order
21   follows full briefing and oral argument.

**ANALYSIS**

23   The immediate dispute pertains to the scope of the release of claims in the settlement
24   agreement. In particular, by the terms of the settlement agreement, Flaviano released all claims
25   "which may exist arising out of the facts giving rise to [the] Notice of Adverse Action and
26   subsequent appeal by [Flaviano]," including claims that Flaviano may not have known about at
27   the time. Defendants argue that the release bars all of Flaviano's claims herein. Flaviano argues

5

that defendants misconstrue the terms of the release and that his claims herein were not within the scope of that release.

### 1. CLAIMS BASED ON TERMINATION.

Flaviano's SPB appeal was limited to alleged procedural defects surrounding his termination. He did not pursue, on that appeal, discrimination or retaliation claims, even those relating to his termination. Flaviano argues that the release in the settlement of his SPB appeal pertained only to those due process claims, and that he retained all other claims against DSH and its employees. This argument ignores that the fact of his termination was the central fact giving rise to Flaviano's SPB appeal, even if his challenges focused on due process issues surrounding that termination. Moreover, in Flaviano's own description of his reason for the appeal, he denied allegations surrounding his weapons qualification form, the traffic stop, and the subsequent internal investigation. Accordingly, claims arising out of his termination and any claims pertaining to the allegations he denied in that appeal, including claims that Flaviano did not know about at the time, were released.

Flaviano avers that he interpreted the release to be limited only to those procedural challenges at the time he signed it (Flaviano Decl. ¶¶ 25, 27). That would, however, be extrinsic evidence submitted to contradict the terms of the settlement agreement, which was completely integrated. Accordingly, that portion of Flaviano's declaration is barred by the parol evidence rule. *Casa Herrera, Inc. v. Beydoun*, 32 Cal. 4th 336, 343 (2004).

At oral argument, Flaviano argued that the settlement agreement was not completely integrated because it referred to the NOAA and the SPB appeal, but did not attach documents pertaining to those events, however, the parol evidence rule does not bar the introduction of extrinsic evidence "to explain the meaning of a written contract . . . [if] the meaning urged is one to which the written contract terms are reasonably susceptible." *Ibid.* Neither party disputes that the references to the NOAA or SPB appeal in the settlement agreement refer to the documents submitted in the instant motion. Accordingly, that extrinsic evidence can be considered without opening the door to extrinsic evidence that contradicts the plain language of the settlement agreement.

6

Accordingly, the plain language of the settlement agreement bars Flaviano's claims based on his termination and defendants are entitled to summary judgment in their favor on those claims, namely, Flaviano's Section 1983 claim and claims for retaliation and discrimination for which the requisite adverse employment action is his termination. Flaviano's complaint also alleges violations based on discrimination, harassment, retaliation, and adverse employment actions other than his termination and the events that led to it. Those claims must be considered separately.

### 2. CLAIMS BASED ON OTHER CONDUCT.

Flaviano argues that the claims of discrimination, harassment, and retaliation detailed in his EEO complaints, all of which were filed before his termination, arose out of a different corpus of facts and thus were not "relat[ed] to the events giving rise to" his termination.

The only events cited in the NOAA were (I) Flaviano's failure to qualify his off-duty weapon, (ii) Flaviano's decision to bring his daughter to work in October 2012, (iii) the traffic stop, and (iv) Flaviano's conduct during the internal investigation of the traffic stop. Those are the events that gave rise to the NOAA. The events which Flaviano denied in his appeal, the NOAA itself, and the procedure surrounding the NOAA, are the only events that gave rise to Flaviano's SPB appeal. The fact that Flaviano referred to his EEO complaints in the text of his SPB appeal (specifically by noting "there was never any problem with [his] 'red and blue' lights until after [he] filed an EEO charge against Chief Daly and her leadership staff") did not automatically bring the substance of those complaints within the scope of the appeal or the terms of the release.

Flaviano's claims under FEHA pertain to allegedly inappropriate comments made by Chief Daly and Lieutenant Gooding relating to his childcare needs, as well as the denial of accommodations for those needs. Flaviano's FMLA and CFRA claims are based on the denial of his request for medical leave and the subsequent docking of his pay. His FLSA claim also refers to "other adverse actions." None of those events gave rise to Flaviano's NOAA nor his appeal. Accordingly, claims arising out of those events are not subject to the terms of the release or at least would not be read into the release on summary judgment.

7

Defendants argue that because Flaviano knew about his claims in his EEO complaints at the time he entered the agreement, such complaints are barred. They refer to *Wright v. Southwestern Bell Telephone Co.*, 925 F.2d 1288, 1293 (10th Cir. 1991), as support, but that decision involved a release waiving "any and all claims [the plaintiff had] or might have [had]." Although the language there was held to bar claims based on the plaintiff's previously-filed EEO complaints, that decision does not apply here, as the language of the release includes the limitation that the released claims were only those that "relate[d] to the events giving rise to" Flaviano's termination and SPB appeal.

Finally, defendants argue that because one of the events referenced in the NOAA, namely, Flaviano's decision to bring his daughter to work and the subsequent counseling record, relate to his childcare needs, any claim based on his childcare needs must be barred. Not so. Flaviano's FEHA claims pertain to remarks about his childcare needs and the denial of accommodations in his work schedule. Neither of those issues was mentioned in the NOAA or the SPB appeal. To bring those claims under the terms of the release simply because they involve the subject matter of "childcare" would be to ignore the plain language of the release, which is not a general "any and all claims" release, but rather, *a release expressly limited to the events that gave rise to Flaviano's NOAA and subsequent SPB appeal*. Moreover, the allegations in the counseling record were not among those that Flaviano denied in his appeal, nor did Flaviano make any allegations of discrimination or retaliation on that basis. It is also unclear whether the counseling record actually gave rise to the NOAA in the first place, as it was mentioned only in the separate "Notice of Progressive Discipline" section, and not in the "Statement of Acts or Omissions" in the NOAA. Accordingly, on summary judgment, it cannot be held that Flaviano released any claims for discrimination, harassment, or retaliation based on comments or adverse actions relating to his childcare needs, apart from any claims based on his termination itself.

**CONCLUSION**

For the reasons stated above and to the extent stated above, defendants' motion for summary judgment is **GRANTED** as to Flaviano's Section 1983 claims and his claims of discrimination and retaliation based on his termination. Defendants' motion is **DENIED** as to Flaviano's FEHA, CFRA, FMLA, and FLSA claims based on other allegations of discrimination, harassment, retaliation, wage claims, and adverse employment actions.

**IT IS SO ORDERED.**

Dated: July 21, 2015.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

9